CALIFORNIA STATE UNIVERSITY
OFFICE OF GENERAL COUNSEL
Christine Helwick (SBN 057274)
Susan Westover (SBN 151211)
401 Golden Shore, 4th Floor
Long Beach, CA  90802-4210
Tel.:  (562) 951-4500
Fax:  (562) 951-4956
swestover@calstate.edu

Attorneys for Defendant Board of Trustees
of the California State University

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARIKH DEMEKPE,<br><br>              Plaintiff,<br><br>      vs.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY,<br><br>              Defendant. | Case No. CV11-1177 DDP (MLG)<br><br>Date:        November 21, 2011<br>Time:        10:00 a.m.<br>Courtroom:   3<br>Judge:       Hon. Dean D. Pregerson<br><br>**DEFENDANT CSU'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date of Filing:   February 23, 2011<br>Trial Date:       Not Set |

TO PLAINTIFF TARIKH DEMEKPE, *IN PRO PER*:

PLEASE TAKE NOTICE that on November 21, 2011, at 10:00 a.m., in Courtroom 3 of this Court (located at 312 N. Spring Street, Los Angeles, CA 90012), defendant Board of Trustees of the California State University (CSU) will move for summary judgment under FRCP 56.

///

///

///

-1-

MSJ: NOTICE/MOTION/POINTS & AUTH.          Case No. CV11-1177 DDP (MLG)

This motion is made on the ground that there is no genuine issue as to any material fact and that CSU is entitled to judgment as a matter of law for the following reasons:

    A.    Plaintiff's civil rights claims have no merit as a matter of law and undisputed fact because his grade appeal was denied in good faith under the terms of the University's Student Grade Appeals Policy.

    B.    Plaintiff's claims for damages against CSU are barred by the Eleventh Amendment.

The motion is based on the following: this notice of motion and motion, the accompanying memorandum of points and authorities, the declarations of Ginger Wilson, Dr. Anupama Joshi, Dr. S. Noel Sturm, Dr. William R. Whetstone, Dr. Miguel Dominguez, Dr. Clarence "Gus" Martin, Susan Westover, and Exhibits 1 through 65, the proposed statement of uncontroverted facts and conclusions of law, the proposed order, the proposed judgment, the pleadings and papers filed in this action, the reply to be filed after plaintiff's opposition, and the oral argument and other matters to be presented at the hearing on this motion.

This motion is made following the many conferences of counsel pursuant to Local Rule 7-3, the most recent of which took place by telephone on September 6, 2011. CSU's counsel has engaged in extensive discussions with plaintiff, including meeting face-to-face, many telephone calls, and numerous emails, and has exhausted all potential informal resolutions of this matter.

CALIFORNIA STATE UNIVERSITY
OFFICE OF GENERAL COUNSEL

Dated: October 17, 2011

*[signature]*

Susan Westover
Attorney for Defendant Board of Trustees of the California State University

**TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................................................I

TABLE OF AUTHORITIES ............................................................................................ II

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................... 1

    A. THE ALLEGATIONS OF THE COMPLAINT ............................................ 1

    B. THE FACTS ................................................................................................ 2

        1. The Grade Appeals Policy and Procedures............................................ 2

        2. Plaintiff's Academic History ................................................................ 4

        3. Plaintiff's Grades in ENG 350 and HUS 460 ....................................... 4

        4. Plaintiff's Grade Appeals ..................................................................... 4

III. PROCEDURAL HISTORY ................................................................................... 8

IV. ARGUMENT ........................................................................................................ 9

    A. PLAINTIFF'S CIVIL RIGHTS CLAIMS HAVE NO MERIT AS A MATTER OF LAW BECAUSE HIS GRADE APPEAL WAS DENIED IN GOOD FAITH UNDER THE TERMS OF THE UNIVERSITY'S STUDENT GRADE APPEALS POLICY. ....................... 9

    B. PLAINTIFF'S CLAIMS FOR DAMAGES AGAINST CSU ARE BARRED BY THE ELEVENTH AMENDMENT. ................................. 11

V. CONCLUSION ................................................................................................... 13

## TABLE OF AUTHORITIES

**CASES**

*Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 98 S.Ct. 948 (1978) .................................................................................................. 10

*BV Eng'g v. Univ. of California*, 898 F.2d 1394 (9th Cir. 1988) .................................. 12

*Disesa v. St. Louis Community College*, 79 F.3d 92 (8th Cir. 1996) .............................. 10

*Dixon v. Alabama State Board of Education*, 291 F.2d 150 (5th Cir. 1961) ................... 9

*Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836 (9th Cir. 1997) ......................... 12

*Edelman v. Jordan*, 415 U.S. 651 (1974) ........................................................... 11

*Hans v. Louisiana*, 134 U.S. 1 (1890) .............................................................. 11

*Jackson v. Hayakawa*, 682 F.2d 1344 (9th Cir. 1982) ........................................... 12

*Meginity v. Stegner*, 27 F.3d 1120 (6th Cir. 1992) .............................................. 10

*Montana v. Peretti*, 661 F.2d 756 (9th Cir. 1981) ................................................ 11

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) ............................. 12

*Schuler v. University of Minnesota*, 788 F.2d 510 (8th Cir. 1986) ............................ 11

*Stanley v. Trustees of the California State Univ.*, 433 F.3d 1129 (9th Cir. 2006) ........... 12

*University of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507 (1985) .......................... 9

**RULES**

FRCP 56(a) .................................................................................................. 9

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. XI .................................................................................. 11

U.S. Const. amend. XIV ................................................................................. 9

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Tarikh Demekpe is an undergraduate student at California State University, Dominguez Hills (CSUDH). He has struggled with poor grades for most of his college career, including his years at other local southern California institutions. He has received failing, low, and/or incomplete grades in many courses, often resulting in the need for him to retake them.

In the spring semester of 2010, Demekpe enrolled in 15 units at CSUDH, including Advanced Composition ("ENG 350") and Research Methods for Human Services ("HUS 460"). In ENG 350, he received a grade of "no credit." In HUS 460, he got a "D." So, he decided to repeat both courses in Summer 2010. In ENG 350, he again got a "no credit." In HUS 460, he slightly improved to a "D+" grade.

Dissatisfied with his grades, he filed two grade appeals. He ended up withdrawing the appeal of the "no credit" determination in ENG 350, but pursued the appeal in HUS 460. It went through the usual course of the grade appeal process, and was denied. When he questioned the outcome, the appeal was re-reviewed by another grade appeal committee. Dissatisfied again, he sued, asserting that his due process rights were violated.

CSU brings this motion for summary judgment because the undisputed facts show that Demekpe received the due process – indeed more – than he was entitled to. Furthermore, CSU, as a state body, is immune from suit for damages.

## II. STATEMENT OF FACTS

### A. THE ALLEGATIONS OF THE COMPLAINT

In his first amended complaint (Docket No. 5), plaintiff Tarikh Demekpe alleges just one claim for violation of due process under 42 U.S.C. § 1983 and/or the Fourteenth Amendment in the processing of a grade appeal over his receipt of a "D+" in his Human Services 460 class at California State University, Dominguez Hills. He alleges that he had to repeat the course, and that the instructor arbitrarily and capriciously graded his

assignments. (First Amended Complaint, ¶ 5.) He claims the University did not follow the processes required by the grade appeal policy. (Id. at ¶ 6.) He claims that two appeals board members – Jasmine Gray and Khaleah Bradshaw – told him that the appeals board had not convened to vote on any appeals for the Summer 2010 session. (Id.) He claims that after he filed his original civil complaint on February 8, 2011 (Docket No. 1), the University reassembled the grade appeals board to review his appeal. (First Amended Complaint, ¶ 6.) He received another denial of his appeal on February 15, 2011. (Id. at ¶ 7.)

### B. THE FACTS

#### 1. The Grade Appeals Policy and Procedures

The systemwide CSU grade appeal policy (Exh. 1) sets forth the principles governing the assignment of grades and the standards for grade appeals for all 23 of CSU's campuses. For example:

- Faculty have the sole right and responsibility to assign grades. (Exh. 1: p. 8.)
- Grades are presumed to be correct. Anyone appealing a grade must prove otherwise. (Exh. 1: p. 8.)
- In the absence of compelling reasons (identified as instructor or clerical error, prejudice or capriciousness), grades are final. (Exh. 1: p. 8.)

(Martin dec. ¶ 3: Exh. 1.)

The CSUDH Student Grades Appeals policy/procedure incorporates these principles and establishes the following procedures:

- Before proceeding with a grade appeal, a student must first make an informal attempt to resolve the matter. (Exh. 3: ¶ 3.1.1: p. 3.)
- The burden of proof is by "clear evidence," a heavy burden of proof that rests with the appealing student. (Exh. 3: p. 2.)
- If informal attempts fail, the student must submit a formal written grade appeal that contains "a clear statement of the problem; the specific action

-2-

    requested of the University; and arguments to support the student's request." (Exh. 3: ¶ 3.1.2: p. 3.)

- The involved faculty member and Department Chair must submit their positions in writing. (Exh. 3: ¶ 3.1.3: p. 3.)
- The Dean will attempt resolution, and if that does not work, she will forward the case file along with her recommendation on the appeal. (Exh. 3: § 3.1.3: p. 3-4.)
- At that point, a tenured faculty member will be appointed as Preliminary Investigator. She will confer with the student, faculty member, Department Chair, and Dean to make a preliminary investigation of the facts alleged by the student. All parties are given a chance to further clarify their positions in writing. (Exh. 3: § 3.2: p. 4.)
- The Preliminary Investigator will issue a written report, keeping in mind the presumption that grades are correct, and that the burden of proof is on the complaining student "to show that the conduct by the faculty member was contrary to procedures, arbitrary, unreasonable, prejudiced, capricious, or the result of computational or clerical error." Further, a grade cannot be reversed if it "resulted from the exercise of reasonable judgment." (Exh. 3: §§ 3.2.3 and 3.2.4: p. 4.)
- The Preliminary Investigator must indicate in her report whether any cause for a grade appeal exists, and whether the appeal should be dropped or instead proceed to a formal hearing by the entire Board. (Exh. 3: §§ 3.3.1: p. 4.)
- The Appeals Board then convenes to determine by majority vote whether cause for a grade appeal exists.[1] The Board's determination is final. (Exh. 3: § 3.3.2: p. 4.) If the Board concludes that there is no cause for a grade

---

[1] A quorum consists of three members, including at least two faculty members. (Exh. 3: § 2.3: p. 3.)

appeal, the proceedings are concluded and the parties are informed in writing. (Exh. 3: § 3.3.3: p. 4.) There is no right to a contested hearing at this point. (Exh. 3: § 3.4: p. 5.)

- If the student believes the procedures have not been properly followed, he must submit a written complaint, including the reasons therefor, to the University President with a copy to the Chair of the Academic Senate. The President or her designee will respond in writing within seven days. (Exh. 3: pg. 2.) But the merits or facts are not appealable beyond the Board, whose decision is final and binding. (Exh. 3: § 3.5.4: p. 6-7.)

(Martin dec. ¶ 5: Exh. 3.)

### 2. Plaintiff's Academic History

Tarikh Demekpe has been taking college courses at various schools in the Los Angeles area since 1999. (Martin dec. ¶ 9; Exh. 9: Transcripts spanning from 1999 to 2010.) He has never been a stellar student, and his transcript shows many failing, incomplete, and poor grades, in addition to repeated courses. (Exh. 9.) His CSUDH transcript shows that he was on academic probation his first three semesters there. (Exh. 9: p. 1-2.)

### 3. Plaintiff's Grades in ENG 350 and HUS 460

In Spring 2010, Demekpe took Advanced Composition (ENG 350) in Spring 2010, but received a grade of "NC" (no credit). (Exh. 9: p. 3.) He also took Research Methods for Human Services (HUS 460), and only earned a "D." (Exh. 9: p. 3.)

He repeated ENG 350 in Summer 2010, and again received an "NC." (Exh. 9: p. 3.) And he repeated HUS 460, too – and only slightly improved to a "D+." (Exh. 9: p. 4.)

### 4. Plaintiff's Grade Appeals

Demekpe filed two separate grade appeals in 2010: the first to challenge his "NC" grade in ENG 350, and the second to challenge his "D+" grade in HUS 460. (Martin dec. ¶ 10.)

### a. Filing of Appeal in ENG 350

Prior to initiating a formal appeal in ENG 350, taught by Prof. Robertson, Demekpe tried to informally resolve the issue. When the Chair of the English Department looked into it, she found that the "no credit" grade resulted from numerous missed classes (10 absences and 9 tardies), too-short papers (not meeting minimum length of assignment), and substandard work (lots of quotes with insufficient analysis and discussion). (Exh. 10.) Demekpe then filed his formal appeal, claiming he attended class regularly and timely and that his assignments were unfairly graded. (Exh. 11.)

The Chair issued her recommendation to deny the grade appeal, finding that the absences and tardies alone were sufficient to warrant a failing grade. (Exh. 13: p. 1.) She also found his written work had insufficient analysis. (Exh. 13: p. 1.)

The Dean forwarded the appeal to the Appeals Board, along with her recommendation that the "no credit" grade appeared to be correct. (Exh. 12.)

Demekpe then supplemented his appeal with another letter, alleging "attendance discrepancies and poor grading methods." (Exh. 14.)

Dr. Noel Sturm was appointed as Preliminary Investigator. (Exh. 28.) When Dr. Sturm contacted Demekpe for his position on the appeal, Demekpe asked to terminate the appeal in ENG 350 and proceed only on the appeal in HUS 460. (Exhs. 31, 32, 34.)

### b. Filing of Appeal in HUS 460

While the appeal in ENG 350 was pending, Demekpe also attempted a bizarre informal resolution of his dissatisfaction with his grade in HUS 460. He sent an accusatory email to Professor Escamilla, noting that he hoped to have him fired. (Exh. 15.) He spent some time meeting with Ginger Wilson, the Human Services program coordinator (equivalent to a Department Chair), and Prof. Escamilla. (Exh. 19.) Demekpe continued to send threatening emails to Prof. Escamilla. (Exh. 17.) His conduct escalated to yelling and use of profanities when they met in person. (Exh. 19: p. 2-3.) Not surprisingly, those informal attempts at resolution failed.

///

1    Demekpe submitted his written grade appeal. (Exh. 20.) It followed the same
2    format – and even the same substance – as his appeal in ENG 350, alleging "attendance
3    discrepancies and poor grading methods." (Exh. 20 (compared with Exh. 14).)

4    The appeal did not specify which particular grade Demekpe was appealing – the
5    "D" from Spring 2010 or the "D+" from Summer 2010. (Exh. 20: p. 3.) He mentioned
6    both semesters in his appeal. (Id.) When he submitted additional information to the
7    Dean, he listed all the grades he received on all the assignments from both the Spring
8    and Summer 2010 sessions. (Exh. 22: p. 2.)

9    Prof. Escamilla submitted his response, addressing the summer grade. (Exh. 24:
10   p. 2.) He explained that Demekpe's assignments were below average, not in the proper
11   format, incomplete, or had not followed the directions. He also explained that Demekpe
12   lost many points because of attendance and lack of class participation. (Exh. 24: p. 2.)

13   Ginger Wilson submitted her recommendation, finding that the grade appeal was
14   not substantiated by the facts, and concluding that Demekpe's grade should remain a
15   "D+." (Wilson dec. ¶ 17; Exh. 26: p. 3.) She found that Prof. Escamilla's attendance
16   records supported his position, not Demekpe's, and that there was nothing to
17   substantiate a claim that other students were treated differently. (Id.)

18   Dean Joshi then issued a recommendation that concurred with Ms. Wilson's,
19   stating, "it is my opinion the evidence does not make a convincing argument to merit a
20   reconsideration of the grade." (Exh. 27.)

21   Dr. Sturm was appointed as Preliminary Investigator for this appeal, too. (Exh.
22   35.) When Dr. Sturm contacted Demekpe for additional information, Demekpe said he
23   "was unfairly graded for assignments" and "was not given full attendance points," while
24   others got extra points and more time to complete assignments. (Exh. 36.)
25   ///
26   ///
27   ///
28   ///

After reviewing the evidence. Dr. Sturm issued a report finding "that this grade appeal should be dropped, not proceeding to a formal hearing by the board." (Sturm dec. ¶ 9; Exh. 39.) Dr. Sturm explained:

> The syllabus clearly states the late assignment and attendance policies and Mr. Demekpe gave no written proof that the instructor was arbitrary, unreasonable, prejudiced, capricious or made a computational error in computing course grades.

(Exh. 39.)

In the meantime, Demekpe continued to threaten Prof. Escamilla, who then made a complaint of harassment. (Exhs. 42-43.) Demekpe was directed to stop contacting Prof. Escamilla or Ginger Wilson. (Exh. 44.)

Upon consideration of the earlier levels of recommendations, the Grade Appeals Board voted, by majority vote, and determined that the "D+" grade should remain unchanged. (Exh. 47.) Resting on the presumption that grades are correct, the Board found a lack of evidence to support Demekpe's contentions. It concluded by finding that "no cause for grade appeal exists," thereby closing the proceedings. (Exh. 47.)

When it came to the administration's attention that Demekpe had been increasingly threatening to faculty and staff, including making a threat of litigation, CSUDH offered to allow for a re-reading of the appeal by the newly reconstituted Appeals Board. (Martin dec. ¶ 27.)

While that was pending, Demekpe sent separate emails to the campus President and Chair of the Academic Senate alleging he was unfairly denied a grade appeal and the victim of a conspiracy. (Westover dec. ¶ 10: Exh. 65, p. 1-2.) Demekpe tried to set a meeting with the campus President, but that request was declined. (Exh. 48: p. 1.) The President's executive assistant advised Demekpe that the President was "aware of [his] concluded grade appeal and fully supports the decision made." (Exh. 48: p. 1.) Demekpe was directed to address further questions to the President's designee, Dr. Gus Martin. (Exh. 48: p. 1.)

1    Under a new Chair, the Appeals Board reconsidered the appeal but came to the
2    same conclusion: the grade should remain unchanged; there was a lack of evidence to
3    support the student's contentions; and no cause for a grade appeal existed. (Exhs. 49,
4    50, 51.)

5    Before the second Appeals Board decision was issued, Demekpe filed this
6    lawsuit. (Docket Doc. No. 1, filed 2/8/2011.) In his First Amended Complaint, plaintiff
7    alleged that two grade appeal board members (Jasmine Gray and Khaleah Bradshaw)
8    gave him written statements asserting that the committee had not convened to vote on
9    any appeals for the Summer 2010 session. (FAC ¶ 6, pg. 2, lines 14-17.) CSU sent a
10   formal discovery request to plaintiff seeking production of those alleged written
11   statements. (Westover dec. ¶ 2: Exh. 57: Request No. 4, p. 2.) The documents
12   produced by plaintiff (Exhs. 59 through 65) contained no such witness statements.
13   (Westover dec. ¶¶ 3-10 and Exhs. 59-65.)

## III. **PROCEDURAL HISTORY**

Plaintiff's original complaint was filed on February 8, 2011, and named California State University, Dominguez Hills and its President, Mildred Garcia, as defendants. [Docket Doc. No. 1.] Plaintiff filed his first amended complaint on February 23, 2011, correcting the name of the sole defendant to the Board of Trustees of the California State University, and removing the President as a named defendant. [Docket Doc. No. 5.] The first amended complaint, in summary fashion, asserts claims for violation of civil rights, violation of due process, violation of the Fourteenth Amendment, and violation of 42 U.S.C. § 1983. As a remedy, plaintiff is asking the court to change his course grade from a D+ to a C and make an award of compensatory damages.

Discovery is closed. No trial date has been set.

///
///
///

-8-

## IV. ARGUMENT

Summary judgment is appropriate under FRCP 56 because there is no genuine dispute on any material fact, so CSU is entitled to judgment as a matter of law. (FRCP 56(a).) Plaintiff's civil rights claims are meritless because CSU complied with the requirements of the grade appeals policy and procedure, and plaintiff has no evidence to the contrary. Furthermore, CSU is immune from a claim for damages under the Eleventh Amendment. This case should be dismissed.

### A. PLAINTIFF'S CIVIL RIGHTS CLAIMS HAVE NO MERIT AS A MATTER OF LAW BECAUSE HIS GRADE APPEAL WAS DENIED IN GOOD FAITH UNDER THE TERMS OF THE UNIVERSITY'S STUDENT GRADE APPEALS POLICY.

The Fourteenth Amendment to the United States Constitution protects individuals from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV. Due process requires notice and some opportunity for hearing. *Dixon v. Alabama State Board of Education*, 291 F.2d 150 (5th Cir. 1961).

CSU's undisputed evidence shows that CSUDH implemented a reasonable Student Grade Appeals policy and procedure, and that it was followed in this case to a final and binding decision. It did not result in an full-fledged adversary hearing because various preliminary decision-makers all concurred that no cause for a formal grade appeal existed. Demekpe will not be able to produce any evidence of discrimination, prejudice, arbitrariness, or capriciousness.

State and federal courts generally adhere to a policy of non-interference in academic or disciplinary decisions pertaining to students, except when those decisions result from bias, bad faith, or arbitrariness. *University of Michigan v. Ewing*, 474 U.S. 214, 225, 106 S.Ct. 507, 513 (1985) (applying a rigid standard for determining arbitrary and capricious behavior, i.e., absent a showing of bad faith, a faculty's professional judgment will not be overruled unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not

actually exercise professional judgment); *Board of Curators of University of Missouri v. Horowitz*, 435 U.S. 78, 85, 98 S.Ct. 948, 952 (1978) (absent showing of arbitrariness or capriciousness, student dismissed from university's medical program was given adequate due process even though she did not receive a formal hearing); *Disesa v. St. Louis Community College*, 79 F.3d 92 (8th Cir. 1996) (nursing student who failed course was not denied due process right to nonarbitrary grading, in light of her failure to show that alleged attendance policy was applied to her detriment and that decision to deny her request to retest was arbitrary and capricious); *Meginity v. Stegner*, 27 F.3d 1120 (6th Cir. 1992) (review procedures afforded by state law school in dismissing law student for academic reasons fully satisfied whatever process was due to student and that even if student had due process right not to be dismissed for arbitrary or capricious reasons, he in no way set forth why or how his dismissal was arbitrary or capricious.)

The amount of "due process" that applies in the higher educational setting can vary on the circumstances. For example, a student may be dismissed for academic reasons if the student has prior notice of faculty dissatisfaction with his performance and of the possibility of dismissal, and if the decision to dismiss the student was careful and deliberate. *Horowitz*, *supra*, 435 U.S. at 85, 98 S.Ct. at 952.

Here, plaintiff has not identified any particular facts by which he was supposedly deprived of due process. Indeed, the evidence shows that his grade appeal tracked the requirements of the Student Grade Appeals policy and procedure, including the right to submit an appeal, contribute additional documentation, engage in informal attempts at resolution, receive recommendations by the involved faculty member (Prof. Escamilla), department chair/coordinator (G. Wilson), and school Dean (Dr. Joshi), the appointment of an unbiased preliminary investigator (Dr. Sturm), all culminating in a review by the Appeals Board members (chaired by Dr. Whetstone along with others), and then a subsequent review by another set of Appeals Board members (chaired by Dr. Dominguez along with others).

///

The fact that some of the student members might not have voted does not establish a violation of due process, since the Board vote is permitted by quorum, which was clearly established here with the faculty members' participation. And even if a university fails to comply with every one of its own internal procedures, such a failure does not amount to a constitutional violation so long as the procedures meet the minimal due process requirements. *Schuler v. University of Minnesota*, 788 F.2d 510, 515 (8th Cir. 1986). Here, CSU's procedures provided plaintiff with ample notice and an opportunity to be heard, and the faculty and staff complied with all of the procedural requirements. In sum, the constitutional requirements were met.

Because the appeals policy and procedure were met, and there is no evidence of unreasonable, arbitrary or capricious conduct, summary judgment should be entered in CSU's favor.

### B. PLAINTIFF'S CLAIMS FOR DAMAGES AGAINST CSU ARE BARRED BY THE ELEVENTH AMENDMENT.

Plaintiff's claims must be dismissed because they are barred by Eleventh Amendment sovereign immunity. The Eleventh Amendment provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Eleventh Amendment immunity extends not just to suits between States and citizens of another State, as a plain reading of the Amendment prescribes, but also to suits between a State and a citizen of that State. *Hans v. Louisiana*, 134 U.S. 1, 10-11 (1890) (sovereign immunity barred a citizen of Louisiana from suing the State of Louisiana to compel the levy of taxes); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974) (stating that the Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state"); *Montana v. Peretti*, 661 F.2d 756, 759 (9th Cir. 1981) (the Eleventh Amendment barred students at a state-sponsored school from suing the state for cutting school funds).

The Eleventh Amendment also bars suits against any entity that is an arm of the state, such as state agencies, departments, and officers. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (barring a class action brought by mentally challenged inmates concerning the fact and condition of their confinement in a state institution). State universities in California are arms of the state for the purpose of Eleventh Amendment immunity. See *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (holding that the University of California is an arm of the state); *BV Eng'g v. Univ. of California*, 898 F.2d 1394, 1395 (9th Cir. 1988) (holding that the University of California was entitled to Eleventh Amendment immunity because it was an instrumentality of the state).

CSU Dominguez Hills is a state university, and thus, is an arm of the state. *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982) ("The district court was correct in characterizing the California State College and the university system of which California State University at San Francisco is a part as dependent instrumentalities of the state.... As California cases indicate, California State Colleges and Universities have even less autonomy than the University of California"); *Stanley v. Trustees of the California State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006) (noting that the Ninth Circuit has previously held that the Trustees of California State University "are an arm of the state that can properly lay claim to sovereign immunity," citing *Jackson*). CSU has not consented to federal jurisdiction or otherwise waived its sovereign immunity, and all claims against it are barred as a result.

Because the Eleventh Amendment bars plaintiff from suing CSU in federal court for damages, this Court should grant CSU's motion for summary judgment.

///
///
///
///
///

-12-

## V. **CONCLUSION**

Tarikh Demekpe's grade appeals were processed in good faith according to campus policy. No due process violation occurred. And CSU is immune from suit for damages under the Eleventh Amendment. Summary judgment should be granted in CSU's favor.

CALIFORNIA STATE UNIVERSITY
OFFICE OF GENERAL COUNSEL

Dated: October 17, 2011

*/s/ Susan Westover*
Susan Westover
Attorney for Defendant Board of Trustees of the California State University

# PROOF OF SERVICE
## Demekpe v. Board of Trustees of the California State University
U.S. District Court Case No.: CV11-1177 DDP (MLG)
OGC No.: 11-0186

I, Jason T. Taylor, declare as follows:

I am employed in the County of Los Angeles, State of California. I am at least 18 years old, and not a party to this action. I am an employee of California State University, Office of General Counsel, whose business address is 401 Golden Shore, 4th Floor, Long Beach, CA 90802-4210.

On **October 17, 2011**, I served the document described as **DEFENDANT CSU'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

| | |
|---|---|
| Tarikh Demekpe | Plaintiff *In Pro Per* |
| 688 Caliburn Drive, #24 | tdemekpe@toromail.csudh.edu |
| Los Angeles, CA 90001 | Tel: (323) 572-1774 |

☒ **BY MAIL—COLLECTION BOX:** I placed each document in a sealed envelope with postage fully prepaid, in the California State University Office of General Counsel's mail collection box in Long Beach, California, so that following ordinary business practices, the envelope would be collected and mailed on this date. I am readily familiar with this office's business practice for collection and processing of mail. In the ordinary course of business, each document would be deposited with the United States Postal Service on that same day.

☒ **BY E-MAIL:** I served each document on the parties by emailing each document in PDF format to each email address listed above. Each e-mail was successfully sent via CSU's email server.

Signed on October 17, 2011, at Long Beach, California. I declare under penalty of perjury under the laws of the State of California that this declaration is true and correct.

*/s/ Jason T. Taylor*
Jason T. Taylor